## Arn v. Chesapeake & Ohio Railway of Kentucky, et al.

(Decided September 26, 1916.)

### Appeal from Mason Circuit Court.

1. Limitation of Actions—Streets—Possession—Notice—Dedication.— When a street in a town or city has been dedicated to public use, though not formally accepted by the municipality, so as to charge it with its care, the notice required by section 2546 of the Kentucky Statutes must be given before limitation begins to run against the right of the municipality to accept the dedication whenever it may elect to do so.

2. Dedication—Reservation—Location of Railroad.—A reservation to the dedicators, in a deed of dedication of a street, of the right to locate railroads in same construed to mean a reasonable

right to so locate railroads, and held to be valid when it does not destroy the chief characteristics of the street, nor defeat the uses to which it is dedicated.

3. Railroads—Action for Manner of Construction.—Causes of action for the manner of the construction of railroad tracks upon an easement owned by the railroad company in a street, accrued when the railroad was constructed, and the increased use of such tracks as the company's business develops and increases, is not an additional servitude upon the street.

4. Trial—Discretion—Pleadings.—The refusal to permit an amended petition, setting up a new cause of action, to be filed, after the issues were completed and the trial before a jury had begun, was not an abuse of the court's discretion.

ALLAN D. COLE and FRANK P. O'DONNELL for appellant.

WORTHINGTON, COCHRAN & BROWNING for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

This action involves the right of appellees to maintain and operate their railroad tracks upon a street, formerly Central avenue, in the town of Chester, now a part of the city of Maysville.

To understand the issues involved here a brief statement of the sources of title of the parties, as well as the pleadings, is necessary.

On May 20, 1869, James Barbour, J. F. Barbour, M. J. Chase and B. M. Hobson purchased from Wm. E. Seldon a tract of land in Mason county on the Ohio river adjoining the city of Maysville on the east. A portion of this tract of land was laid off into lots and streets by the purchasers, and on July 3, 1869, they executed and caused to be recorded in the county clerk's office, together with a plat of the land thus divided, an instrument of writing in which the lots and streets are described and the following dedication is made:

"Application will be made to the next Legislature of Kentucky to incorporate said land as a town to be called Chester and the streets to be dedicated to the public use, reserving to these parties the right to control the location of any railroad upon said streets or to demand reasonable compensation for any part of the streets which may be demanded or condemned by any railroad company."

On January 17, 1878, by special act of the legislature the town of Chester, including the above tract of land,

was incorporated; and in 1891 was annexed to and is now a part of the city of Maysville.

In 1851 the Maysville & Big Sandy Railroad Company was incorporated, and a survey made looking to the building of a railroad from Maysville, through the above tract of land, to Ashland. It is probable, although not conclusively shown, that the line of railroad as then surveyed passed through what afterwards became the town of Chester, and upon what was called Central avenue.

In 1873 the Kentucky & Great Eastern Railroad Company acquired by purchase the property and franchises of the Maysville & Big Sandy Railroad Company, and soon thereafter constructed a line of railroad from Maysville some miles east over the strip of ground designated on the plat of the town of Chester as Central avenue. This corporation becoming involved financially, the road was not completed, and except for use by construction engine, that portion of it that was constructed was never put into use.

In 1887 and 1888 the Maysville & Big Sandy Railroad Company having acquired the property and franchises of the Kentucky & Great Eastern Railroad Company constructed a single track railroad from Covington to Ashland through the town of Chester along Central avenue, in practically the same place where the survey was originally made in 1850, and the first construction made after 1873. In 1889 a sidetrack was built parallel with and along the main track on Central avenue in the town of Chester. In 1894 this sidetrack was extended some distance beyond Chester, and since 1896, at least, has been used as a passing track, all of the west bound trains passing over the original main line track, and all of the east bound traffic passing over what had formerly been a sidetrack. The railroad has been operated over both of these tracks continuously since 1889 by the Maysville & Big Sandy Railroad Company, and its successors in title, the C. & O. Railroad Company, now owning and operating same.

In 1912 the entire line from Cincinnati, Ohio, to Newport News, Virginia, was double tracked, the sidetrack or passing track along Central avenue being incorporated into one of the main line double tracks.

After the construction of the railroad and sidetrack along Central avenue, the appellant, Fred Arn, pur-

chased a lot fronting on said avenue and placed a residence thereon, the exact date of which is not shown in the record, but which the testimony shows was about twenty-three years before the trial of this suit in 1915, which would be about 1892.

This action was instituted by Arn on March 6, 1913, against the Chesapeake & Ohio Railway Company of Kentucky, the Chesapeake & Ohio Railway Company, a Virginia corporation, and the Chesapeake & Ohio Railway Company, a Kentucky corporation, to recover damages, first, for an alleged unreasonable interference with appellant's use of Central avenue and with his rights of ingress to and egress from his said property, alleging that the railroad tracks as originally constructed and subsequently maintained were placed and maintained in a public street of a municipality without any municipal authority or grant so to do; that as so constructed and maintained the railroad was a nuisance, and because of the alleged unlawful occupation of the street the appellant was entitled to recover upon the theory that the damage sustained was temporary in character and continuing in its nature; and, second, to recover as permanent damages for injuries claimed to have been sustained by placing an additional servitude upon the street in 1912 by converting one of the tracks originally constructed as a sidetrack into a main line track, as the results of which larger, heavier and more numerous trains were operated past appellant's property, and that the noise, soot and cinders from passing trains were increased and the injury to his rights of ingress and egress rendered greater.

The appellees, by their answer, traversed all the allegations of injury or damage to appellant's property, and denied that the railway tracks, etc., were located in a street; denied that Central avenue was a street or public highway, or that it ever had been, or that there had ever been any dedication thereof, or any acceptance of a dedication. Appellees also affirmatively pleaded, first, that the land upon which said railway tracks, roadbed, improvements, etc., were constructed and maintained, was and is the soil and freehold of the appellees and their predecessors in titles; second, that said land had been in the adverse possession of appellees and their predecessors in title for more than fifteen years prior to the filing of this suit; and, third, that appellant's cause of

action was barred by both the five-year and fifteen-year statutes of limitation. The affirmative defenses set up by appellees were traversed of record.

At the conclusion of all the evidence the trial court directed a verdict in favor of appellees and judgment was rendered accordingly, from which judgment this appeal is prosecuted.

The evidence does not sustain appellees' claim to title by adverse possession to the fee in their right of way, as whatever, if any, possession their predecessors in title had prior to the construction by the Kentucky & Great Eastern Railway Company, subsequent to 1873, was not shown to be adverse or continuous, and the town of Chester was incorporated in 1878, before title could be perfected by adverse possession. Since the incorporation of Chester, no notice of adverse claim having been given, the statutes of limitation, under section 2546 of the Kentucky Statutes, were inoperative; and whether or not the actual acceptance was made by the municipality by ordinance or improvement or otherwise, is immaterial since the potential right to accept whenever desired has existed, under the deed of dedication, ever since the incorporation of Chester, against which limitation does not run in the absence of the required notice. City of Henderson vs. Yeaman, 169 Ky. 503.

But title in appellees to an easement in the street is established, which bars the claim asserted by appellant, and we will, therefore, confine ourselves to a consideration of the two propositions argued by appellant as destructive of the easement, viz.: That the reservation by dedicators to locate railroads on the dedicated streets was inconsistent with the uses and purposes for which the streets were dedicated and therefore void; that the right to an easement shown by appellees from dedicators was verbal and permissive only, and therefore insufficient to bar his claim.

1. The authorities are unanimous, so far as we are aware, in upholding a reservation such as we are considering and in sustaining the right of a railway company to locate its tracks under authority thereof. Ayres vs. Pa. R. R. Co. (N. J.), 57 Am. Rep. 538; Tallon vs. City of Hoboken (N. J.), 37 Atl. 895; City of Noblesville vs. Lake Erie & W. Ry. Co. (Ind.), 29 N. E. 484; Okla.

City & T. R. Co. vs. Dunham (Tex.), 88 S. W. 849; 13 Cyc. 459; Elliott on Railroads and Streets, Sec. 148.

In the case of Tallon vs. City of Hoboken, *supra,* the court said:

"That a person who dedicates to public use as a highway, may, in such dedication, reserve to himself and his assigns the right to construct and operate a railroad therein, cannot be denied. It has been so decided both in the Supreme Court and in this court. Ayres vs. Railroad Co. 48 N. J. Law, 44, 3 Atl. 885; Id. 52 N. J. Law, 405, 20 Atl. 54. And, when such reservation is made, the public takes the highway *cum onere.*"

Counsel for appellant while conceding the doctrine as above stated contends that the present case falls within an exception recognized in the above case that a condition cannot be annexed to the dedication of a street or highway which will destroy its chief characteristics. This exception is clearly recognized in all of the cases, and if the reservation in the dedication involved here was of such a character as to destroy the chief characteristics of the proposed street, the reservation could not be upheld. Counsel for appellant in support of his contention argues that if the reservation gave the dedicators the right to locate one railroad on one street, it gave them the right to locate a number of railroads upon all or any streets sufficient to destroy their use as streets. This, however, does not follow. The right to locate is, of course, a reasonable right consistent with the other uses of the street. The railroad as located does not destroy the chief characteristics of Central avenue as a street. The railroad tracks are located on the north side of the street while Arn's property abuts it on the south, and there is a portion of the street its entire length, at least forty-two feet wide, next to the sidewalk on Arn's side that is not in any way obstructed by the railroad. There is ample room in the street for all uses to which it was dedicated, and all of it is, as a street, subject to the police power of the city, and retains the characteristics of the uses to which it was dedicated.

We therefore conclude that the reservation in the dedication of Central avenue was a valid reservation to the parties who made the dedication, and that they had the right, when reasonably exercised, to grant the right to the railroad company to locate its tracks longitudi-

nally along that street, and that the people who acquired the property abutting upon that avenue, and the town of Chester when it accepted the dedication, if it ever did, took, or whenever it does accept, will take same with the burden included in the dedication.

2. Upon the second proposition stated above the testimony of Mr. J. F. Barbour, who is the only survivor of the dedicators, is that in 1887 when the railroad was being constructed there was some controversy between the railroad company and the dedicators about where in the street the railroad should be located, the railroad company insisting upon locating the railroad tracks on the north side of the street, while the dedicators insisted upon the center of the street for the location. Appellees upon the trial were unable to show any grant of right of way of written authority to use the street, but they introduced proof to show that many grants of rights of way were not recorded, and that some of them, together with other original papers, had become lost or destroyed. If the railroad company had no valid authority to lay its tracks upon this street, and the privilege granted to them by the dedicators was only permissive, it is probable that the railroad company would have had to accede to the desires of those who had the right to grant the permission, rather than that they should assent to what the railroad contended for. The mere fact that there was a controversy between these parties is strongly presumptive that the railroad company must have had some valid authority granted by the dedicators for going upon the street. This in connection with the fact that the railroad company was building a permanent structure, which it, upon the one hand, would have been unwilling to have constructed without some binding right, and which they, upon the other hand, would have been unwilling to have permitted to have been constructed where they did not want it in the absence of any such right; but, however that may be, appellees and those through whom they claim, have continued in the use and possession of the ground upon which the tracks have been located along Central avenue since 1889, and even if their original entry had been under a verbal agreement and permissive only, the user pursuant to agreement for fifteen years as against the dedicators is equivalent to a written conveyance of the right, as was decided by this court in the

case of Talbott vs. Thorn, 91 Ky. 417. And the municipality and abutting property owners are bound thereunder by the reservation in the deed of dedication.

It therefore results that appellees own in that part of the street occupied by both of these tracks an easement under the reservation retained by the original dedicators, and have the right, without liability to abutting property owners, to maintain and make such use of these tracks as the increased business of the company may require, subject, however, to whatever concurrent rights in and to the street may have been perfected under the deed of dedication by abutting property owners and the public. As both of these tracks were built in 1889 pursuant to a valid authority so to do and are permanent structures, whatever claim existed for damages to abutting property owners by reason of the manner of construction accrued then and is now, of course, long since barred. Nor is this altered by reason of the fact that in 1912 one of these tracks became a part of a main line track leading from Cincinnati to Newport News. This was not an additional servitude placed upon the streets as the servitude of the two tracks had been there since 1889, and the increased use of the tracks or either of them to accommodate the increased business of the company is not an additional servitude upon the street. L. & N. R. Co. vs. Orr, 91 Ky. 109; Klosterman vs. C. & O. R. Co., 114 Ky. 426; Kilcoyn vs. Chicago, etc., R. Co., 141 Ky. 237.; Ferguson vs. Covington & C. E. Bridge Co., 108 Ky. 665.

It therefore results that the trial court did not err upon the testimony adduced in directing a verdict in favor of appellees.

There is one other objection urged by appellant entitled to consideration, and that is, the court below refused to permit an amended petition charging negligent operation of the railroad to be filed. This amendment, however, was not offered until after the jury had been selected and part of the evidence offered. As the trial had already begun, it was within the sound discretion of the trial court to permit an amended petition to be filed, and as this amendment set up an entirely different cause of action from the one upon which issue had been joined and the trial begun, it was not an abuse of discretion to refuse to permit the pleading then to be filed.

The relative rights of the public and of appellees in that portion of the street occupied by the railroad tracks are not involved here, and are in no way affected by this decision.

Perceiving no error in the judgment it is affirmed.